UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KLEE LEE MORRISON,<br><br>                Plaintiff,<br><br>v.<br><br>MINIDOKA COUNTY SHERIFF DEPARTMENT, CASSIA COUNTY SHERIFF DEPARTMENT, LANCE STEVENSON, SHANNON TAYLOR, JORDAN WILLIAMS, JENNIFER LEE, DUSTIN BOURN, KIM BOURN, DAKOTA JENNINGS, SUMMIT FOODS, DEPUTY BALES, WAYNE WRIGHT, DEBBIE BELL, PA ERIC WELLS, DEPUTY LINDSEY, LENDON MOSS, EDWARD GOMM, DEPUTY RUBY, DEPUTY MARTINEZ, and JOHN & JANE DOES,<br><br>                Defendants. | Case No. 4:24-cv-00447-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Court must review complaints filed by paupers and prisoners seeking relief against state actors to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915 and 1915A. Having reviewed the prisoner Complaint of Plaintiff Klee Lee Morrison ("Plaintiff"), the Court concludes that he may proceed on only his First and Fourteenth Amendment kosher/nutritional diet claims against Shannon Taylor at this time. As noted herein, some other claims may be asserted later by amendment, if Plaintiff discovers additional facts supporting them.

INITIAL REVIEW ORDER BY SCREENING JUDGE- 1

REVIEW OF COMPLAINT

1. **Standard of Law for Screening**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court liberally construes the pleadings to determine whether a case should be dismissed.

Under Rule 8 and 28 U.S.C. §§ 1915 and 1915A, the Court may dismiss some or all of the claims in a complaint for any of the following reasons:

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, including that the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar sua sponte (on its own), *see, e.g.*, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- frivolousness or maliciousness, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief. *Id*.

To state a claim under 42 U.S.C. § 1983, the civil rights statute, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

## 2. Discussion of Claims Related to Plaintiff's Pending Criminal Case

### A. *Wrongful Seizure of Legal Work*

In a criminal case in Minidoka County, No. CR34-22-00288, Plaintiff was charged with first degree murder, destruction of evidence, conspiracy to destroy evidence, and failure to report a death. When Plaintiff arrived at the Mini-Cassia Criminal Justice Center ("jail") for booking, Sergeant Edward Gomm, Deputy Bales, and Administrative Sergeant Jennifer Lee allegedly seized Plaintiff's legal work, made copies for the prosecutor, and withheld his legal books.

Later, Minidoka and Cassia County actors—Prosecutor Lance Stevenson, Minidoka Prosecutor's Office Secretary Kim Bourn, Lieutenant Shannon Taylor, Staff Sergeant Jordan Williams, Detective Lendon Moss, Detective Dustin Bourn, Corporal Dakota Jennings, Sergeant Edward Gomm, and Administrative Sergeant Jennifer Lee—worked together to obtain a warrant to search Plaintiff's cell and confiscate some of his legal documents that were clearly marked as confidential legal documents. The state district court granted in part and denied in part Plaintiff's motion to dismiss in that ongoing criminal case. *See* Dkt. 3-8 at 1-5. The state district court ordered the Minidoka prosecutor's office to recuse itself from the criminal case, appointed a special prosecutor, and ordered that the detectives involved cannot testify at Plaintiff's trial unless he calls them, and scheduled a *Kastigar* hearing for February 26, 2025.[1] That case is set for a jury

---

[1] In *Kastigar v. United States*, 406 U.S. 441, 453 (1972), the United States Supreme Court held that, as a general principle, the Fifth Amendment protects an individual against the government when it seeks to use compelled answers, and any evidence derived from compelled answers, in a criminal case in which he is a defendant. A *Kastigar* hearing requires the government to demonstrate that none of the evidence it will use at trial was derived from evidence procured from the defendant wrongfully or pursuant to the terms of an

trial on November 24, 2025.[2]

The *Younger* abstention doctrine forbids federal courts from interfering with pending state proceedings, absent extraordinary circumstances that create a threat of irreparable injury. *See Younger v. Harris*, 401 U.S. 37, 53–54 (1971). In that case, the Court held that a federal court should interfere in an ongoing state criminal matter only in the most unusual of circumstances.

A federal court should abstain from hearing a case under the *Younger* doctrine when three factors are present: (1) there is an ongoing state judicial proceeding; (2) the proceeding must implicate an important state interest; and (3) there must be an adequate opportunity in the state proceeding to raise the constitutional challenge. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Where abstention is appropriate, a federal court may still entertain an action when "extraordinary circumstances" are present, including: (1) where irreparable injury is both "great and immediate," *Younger*, 401 U.S. at 46; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id*. at 53-54; or (3) where there is a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief," *id*. at 54.

Plaintiff has identified a violation of his constitutional rights in state court; however, the state district court recognized this and fashioned a remedy to address the violation. Dkt.

---

immunity agreement or order. *See* "The Kastigar hearing," 2 *Federal Trial Handbook: Criminal* § 44:14 (2024-2025 Ed.).

[2] *See* https://portal-idaho.tylertech.cloud/odysseyportal/Home/WorkspaceMode?p=0 (Morrison, Klee, accessed 01/22/2025).

3-8. This course of action demonstrates that the state courts are monitoring and protecting Plaintiff's federal constitutional rights in his state criminal action. Acting in this case would only be unnecessary interference. For example, Plaintiff's request that this Court remove all Defendants in this action from being witnesses in his criminal case is an order the criminal court has already made and will review in the *Kastigar* hearing. *See* Dkt. 3-2 at 9. All three *Younger* factors support abstention here.

Plaintiff does not believe he will be able to have a fair trial in state court, but, to date, the state district court's handling of the constitutional violation is appropriate. Rather than asserting his federal claims in a parallel civil rights case such as this one, Plaintiff is required to bring all of his claims before the state district court. He alleges that he does not now have all of the information needed to defend himself because of the missing pages, but he has not identified which documents are missing and why they are critical to his criminal defense. If, in fact, he cannot defend without them, he must raise that issue in his state criminal case and, if unsuccessful, pursue an appeal through the Idaho state court system, showing how his criminal defense was damaged.

If Plaintiff disagrees with this preliminary conclusion, he may file a response to this Order providing facts showing why this Court should not abstain from hearing these claims in a civil rights action.

### B. *Lack of Attorney-Client Privileged Telephone Lines at Jail*

Plaintiff alleges that Director/Prosecutor Lance Stevenson, Lieutenant Shannon Taylor, Staff Sergeant Jordan Williams, and Administrative Sergeant Jennifer Lee refused to cease using listening and recording devices in the jail to monitor attorney-client

privileged calls and cease providing these recordings to prosecutors. Plaintiff alleges he is at a disadvantage in his current criminal case because the jail monitors his privileged calls. He asserts that "there is very clear audio of me talking to my lawyer that has been subpoenaed and produced." Dkt. 3-3 at 1. This claim bears on the question of what evidence can be used at Plaintiff's state criminal trial and should be raised first in the criminal case. If the issue is not addressed and remedied in the criminal case, then Plaintiff may seek leave to amend this claim back into this case.

### C. *Lack of Certified Mail Service at Jail*

Plaintiff alleges he lost custody of his children, 26 firearms, and various personal property in his Arizona divorce because he was not provided with certified mail services at the jail. He also wanted to obtain records from Utah incarceration to prove 20 days' time served and was not able to do so. Plaintiff has not clearly specified why he was not able to accomplish these tasks through other means—regular mail documented as "sent" by a jail mail log; use of free indigent service of process through the sheriff's office; or a request for an alternative means of delivery directed to the Arizona state court (for example, if he, in fact, used First Class mail service to send mail to his wife, and she regularly represented that she did not receive it).

There does not appear to be any governing precedent for this issue, but the United States District Court for the District of New Jersey adjudicated a similar case: "The denial of certified mail, return receipt requested, at State expense … falls far short of a constitutional issue. Ordinary mail is sufficient for access to the courts." *Falzerano v. Collier*, 535 F. Supp. 800, 803–04 (D.N.J. 1982). This Court agrees with the reasoning of

INITIAL REVIEW ORDER BY SCREENING JUDGE- 6

*Falzerano*. This claim will be dismissed for failure to state a federal claim upon which relief can be granted.

### 3. Discussion of Dental and Medical Claims

Plaintiff asserts that, in August 2024, after Dr. Wayne Wright, a dentist, removed one of his teeth, Physician's Assistant (PA) Eric Wells and Nurse Debbie Bell refused to give him pain medication as prescribed by his doctor. In September 2024, Plaintiff complained to Bell and Wells that the tooth removal left him with an exposed bone in his gum. Plaintiff alleges that dental and medical providers refused to remedy the problem. Wright allegedly refused to extract or repair the bone, causing Plaintiff great pain and suffering. Plaintiff also alleges that Physician's Assistant Eric Wells and Nurse Debbie Bell refused to take any measures to remedy the exposed bone and refused to given him pain medication as prescribed by his doctor. He wrote a grievance, and Staff Sergeant Jordan Williams denied the grievance. See Dkt. 3-8 at 11.

The Fourteenth Amendment's Due Process Clause applies to pretrial detainees and is violated when a detainee's conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees have a due process right to adequate health care while detained. *See Sanchez v. Young County, Texas*, 956 F.3d 785, 791-92 (5th Cir. 2020).

Detainees' conditions-of-confinement claims are analyzed using an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under that standard, a detainee must establish the following elements: "(1) The defendant made an intentional decision with respect to [the medical treatment of the

INITIAL REVIEW ORDER BY SCREENING JUDGE- 7

plaintiff]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir.) (quoting *Gordon*, 888 F.3d at 1125), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (citation omitted).

The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

      Plaintiff's exhibit shows that Staff Sergeant Williams signed off on a grievance response prepared by PA Eric Wells, who responded that he checked with the dentist who had pulled the tooth, and the dentist reported there was not an infection and treatment was given at the dentist's office. Dkt. 3-8 at 11. Wells stated that the medical unit changed Plaintiff's medication to "something longer acting to better manage [his] pain overnight." Wells stated: "I hope that provided relief, in fact I'm told that you are improving. If you have any further concerns, please submit a medical request." Dkt. 3-8 at 11. Nothing in Wells' or Williams' response shows that any medical or dental Defendant acted improperly under the Fourteenth Amendment.

As to non-medical reviewer Williams, the legal standard is that, "[w]hen responding to medical grievances, non-medical administrators may rely on, and are not required to second-guess, the judgments of qualified medical professionals." *Valenzuela v. Corizon Health*, No. CV1800211PHXMTLMHB, 2020 WL 1000021, at *7 (D. Ariz. Mar. 2, 2020) (unpubl.). An exception is that, "if prison officials choose to rely upon a medical opinion which a reasonable person would likely determine to be inferior, their actions may amount to the denial of medical treatment and the unnecessary and wanton infliction of pain. *Id.* (citations, alterations, and punctuation omitted). Here, nothing in the response drafted by medical personnel shows that the response drafted by Wells was "inferior" or that Williams, who was not a medical provider, should have been on notice that the response was inappropriate and required additional investigation.

Given this grievance response that explains Plaintiff's course of dental and medical treatment, Plaintiff has not stated a plausible cause of action against the dental and medical providers and reviewing jail official. Differences in judgment between an inmate and medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Plaintiff will be given leave to obtain his dental and medical records and provide additional facts showing that providers acted in a manner that equates to objective deliberate indifference. For example, the medical records will document what, exactly, Plaintiff's medical condition was after the tooth extraction—was it an exposed bone that was bothering Plaintiff, or something else? Did he receive additional treatment from the

dentist? The records will also provide the chronology of events and who and what treatment was involved at each stage of care.

### 4. Discussion of Kosher Diet and Nutrition

Plaintiff asserts that jail officials did not provide him with a kosher diet consist with his religious beliefs, that officials sometimes "shorted him food," and that the nutritional value of the kosher diet was substandard. The religious diet claim implicates the First Amendment, while the lack of nutrition claim implicates the Fourteenth Amendment.

A First Amendment Free Exercise Clause claim asserts that the government is attempting to discourage a religion or practice. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Prisoners retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The First Amendment Free Exercise Clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion.

Prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). A prisoner is not required to compromise religious beliefs in order to obtain adequate nutrition. *See Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1355–57 (D. Ariz. 2017).

A First Amendment free exercise of religion claim must contain facts establishing these elements: (1) the inmate has a sincerely held belief, and (2) the defendants burdened the practice of religion (3) by preventing the inmate (4) from engaging in conduct mandated by the inmate's faith (5) without any justification reasonably related to legitimate

penological interests. *Shakur v. Schriro*, 514 F.3d 878, 884-885 (9th Cir. 2008) (relying on *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The courts must balance prisoners' First Amendment rights against the goals of the correctional facility. *Bell v. Wolfish*, 441 U.S. 520 (1979). The *Turner* case established four factors to consider in determining whether a regulation is reasonably related to a legitimate penological interest: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93 (internal citations and punctuation omitted). When a prison regulation impinges on an inmate's free exercise rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Id.* at 876; *Shabazz*, 482 U.S. at 348; *Turner*, 482 U.S. at 89. A *Turner* analysis generally is appropriate at the summary judgment phase, rather than the motion to dismiss phase.

Plaintiff also brings injunctive relief claims against the jail officials under RLUIPA, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc. RLUIPA, which provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that

imposition of the burden on that person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Under RLUIPA, the inmate bears the initial burden of showing that the prison's policy constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

RLUIPA does not provide for damages against the states or state defendants in their *official* capacities because of Eleventh Amendment immunity. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Further, "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

Plaintiff asserts that Defendant Jail Director Shannon Taylor forced Plaintiff to sign a waiver to obtain a kosher diet, and that Plaintiff was denied any information about its nutritional content or calories. Nor has the prison disclosed whether the meals are prepared in a kosher manner in the jail kitchen. Corporal Dakota Jennings and Staff Sergeant Jordan Williams refused to show Plaintiff the nutritional facts for his menu, but stated only that his menu had been approved by a nutritionist or dietician as meeting the minimum standard of 2500 calories per day. Dkt. 3-8 at 21, 25.

Prison officials have provided him with only a South Dakota address for the jail food service company, and the company has not responded to any of Plaintiff's requests for information about the food.

Plaintiff asserts that Deputy Lindsey threw away all of the kosher meals upon the order of Corporal Dakota Jennings. Because it is not known why the food was thrown

INITIAL REVIEW ORDER BY SCREENING JUDGE- 12

away, there is insufficient information to show it was for an improper reason and not because the food was expired or spoiled.

Plaintiff asserts that Lance Stevenson, the Minidoka prosecutor, who is also on the Mini-Cassia Joint Justice Committee, is responsible for the condition and type of Plaintiff's jail food. Plaintiff states that his lawyer spoke to Stevenson before a criminal hearing, and Stevenson "said as a Board of Director he would call the jail and fix it since this is not OK." Dkt. 3-6 at 3. The problem was never resolved. Liability cannot be based merely on a conversation between Plaintiff's lawyer and the prosecutor before an unrelated criminal hearing. There are no allegations showing whether Stevenson did or did not do anything about this issue, including delegating the issue to persons who directly supervised the food issues. Without more to show that Stevenson had proper notice of and responsibility to remedy the jail food issues, Plaintiff may not proceed against Stevenson. However, Plaintiff may file a motion to amend Stevenson back into this case if he discovers additional facts showing potential liability. Stevenson is not necessary for potential injunctive relief in this case, because Taylor is in charge of the jail and can implement any relief ordered.

Plaintiff complains that he is served the same type of food all the time, and it has become monotonous: milk, oatmeal, tortillas, butter, jelly, rice, carrots or celery, apple or orange, and boiled eggs. Beans and legumes were eliminated from his diet due to a personal health issue. There is no constitutional right to a "variety" of food as a pretrial detainee. He has no cognizable claim that the items he receives are not varied. However, if he is not obtaining adequate nutrients or calories from these limited items, he has a Fourteenth Amendment conditions-of-confinement claim.

INITIAL REVIEW ORDER BY SCREENING JUDGE- 13

Plaintiff asserts that when Defendants Ruby, Jennings, and Martinez bring him his food tray, an item of food is always missing, such as the tortillas, fruit, or eggs. These Defendants will not fix daily shortages or missing items. Plaintiff alleges that other officers will replace the missing items if requested. Plaintiff asserts that these facts support some type of constitutional claim, such as an equal protection claim or a harassment claim. But Plaintiff has not provided sufficient information to show that the officers who served the meals were responsible for the missing items. Nor has Plaintiff shown that officers were required to replace items, or that missing items significantly impacted the nutritional value of the meals. Plaintiff may amend this claim back into the case if he discovers additional facts.

Plaintiff also asserts Taylor refused to serve him the prepackaged meals as an act of retaliation for Plaintiff's complaints about his diet. There are insufficient facts to support this claim, because it is not known whether there was a legitimate reason to throw the meals away, if, that, in fact, happened. When Plaintiff has conducted discovery, he may amend this claim back into the case if he obtains additional facts to support all of the elements of a retaliation claim.

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an

injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

Plaintiff also names Summit Foods, the jail food service contractor, as a Defendant. However, Plaintiff cannot sue a private entity without showing that his lack of kosher food is due to a policy of Summit Foods. For example, he contrarily asserts that the jail has a variety of kosher hot meals (prepackaged and frozen), but Taylor and Jennings threw the meals away or refuse to provide Plaintiff with the meals. These allegations suggest that Summit Food provides the correct meals prepared in the correct manner, but jail officials do not serve them. There is simply not enough information here for Plaintiff to proceed under the Fourteenth Amendment.

Plaintiff also asserts, without a legal citation, that Food and Drug Administration (FDA) regulations require that Defendants provide Plaintiff, a prisoner, with specific information about the kosher nature or nutritional value of the food served at jails. The

Court is not aware of such a regulation. Even if one exists, the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.*, does not create a private right of action. *Turek v. General Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011). Nor is there a private cause of action for violations of Food and Drug Administration (FDA) regulations. *Fulgenzi v. PLIVA, Inc.*, 867 F. Supp. 2d 966 (N.D. Ohio 2012), *decision rev'd on other grounds*, 711 F.3d 578 (6th Cir. 2013). Specifically, Title 21 U.S.C. § 337(a) provides that the enforcement of FDA regulations is reserved for the federal government, with some exceptions that permit a State (not a private person) to bring a cause of action under some subsections. *See* 21 U.S.C. § 337(b).

In summary, Plaintiff may not sue Summit Foods because he has failed to show that his inability to obtain kosher meals was due to a Summit Foods policy. He has not alleged facts showing that the withholding of the prepackaged meals are due to Summit Foods, or that the diet Summit Foods provides does contain proper nutritional content. There is an insufficient evidence showing that Summit Foods has any control over what is served to Plaintiff each day. Plaintiff will be given leave to amend if he obtains additional information in discovery showing potential liability. He may not proceed under FDA regulations because no private cause of action lies, and this claim should not be included in any amendment.

### 5. Conclusion

Upon the current pleadings, Plaintiff may proceed only against Defendant Shannon Taylor, on the lack of kosher meal claims under the First Amendment (individual and

official capacity) and RLUIPA (official capacity) and lack of proper nutrition/calories claim under the Fourteenth Amendment (individual and official capacity).

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation. Amendment may be permitted at a later date as set forth above, within the time frame specified below.

## ORDER

IT IS ORDERED:

1. Plaintiff may proceed against Defendant **Shannon Taylor**, on the lack of kosher meal claims under the First Amendment (individual and official capacity) and RLUIPA (official capacity) and lack of proper nutrition/calories under the Fourteenth Amendment (individual and official capacity).

2. Defendant will be allowed to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendant chooses to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt.

3), with exhibits, a copy of this Order, and a Waiver of Service of Summons to the following counsel:

>**Douglas G. Abenroth**
>Cassia County
>Prosecuting Attorney
>P.O. Box 7
>Burley, ID 8331,

on behalf of Cassia County Sheriff's Department Lieutenant Shannon Taylor.

3. Claims against all other Defendants are dismissed at this time without prejudice to amendment, and they will be terminated as parties to this case.

4. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

5. If Plaintiff receives a notice from counsel indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service address of Defendant, or claims will be dismissed without prejudice without further notice.

6. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases,

issued with this Order.

7.  Any amended pleadings must be submitted, along with a motion to amend, within **150 days** after entry of this Order.

8.  Dispositive motions must be filed within **300 days** after entry of this Order.

9.  Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United

States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 27, 2025

_____
David C. Nye
Chief U.S. District Court Judge